UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-10981-RWZ

DARREL ALLEN, *et. al.*
[DONNELL THOMPSON]

v.

RICHARD J. ROUSE, *et al.*
[WILLIAM TORRES]

ORDER ON DEFENDANT'S POST-TRIAL MOTIONS

July 17, 2009

ZOBEL, D.J.

I.      **Procedural History**

Plaintiff, Donnell Thompson ("Thompson"), alleged that defendant William

Torres ("Torres"), a correctional officer at the Suffolk County House of Correction, beat

him while he was a prisoner at the facility in 1999.  On February 23, 2009, a jury found

not only that Torres had assaulted Thompson, but that the beating and the injuries he

suffered as a result violated Thompson's rights under the Eighth Amendment.  The jury

awarded him $825,001 in compensatory damages and assessed punitive damages in

the amount of $50,000.  (See Jury Verdict (Docket # 344).)

Defendant now moves for judgment notwithstanding the verdict ("JNOV")

(Docket # 349) under Fed. R. Civ. P. 50(b) or alternately for remittitur and/or a new trial

(Docket ## 348, 350) under Fed. R. Civ. P. 59(a).  Defendant's earlier motions for

judgment as a matter of law ("JMOL") (Docket ## 341, 343) under Fed. R. Civ. P. 50(a)

are still outstanding.

## II.   Evidence Presented at Trial

At trial, the jury heard conflicting testimony concerning the events of October 22, 1999.  At that time, plaintiff was incarcerated in a low security cellblock in which the prisoners were required to leave their cells to visit communal bathrooms.  A lockdown was in progress that evening and plaintiff was confined to his cell with two other cellmates after the evening meal.  Plaintiff testified that shortly after the lockdown began he needed to use the bathroom and pressed the notification button in his cell to alert Torres, the officer on duty, of his need.  Over the next several hours, as he became more and more desperate, he continued to press the button and yelled to be let out until, just before the end of Torres' shift, he began shouting and kicking the door to his cell.  Torres and his captain came upstairs and confronted plaintiff.  Torres told Thompson that he would have to wait for the next shift to use the bathroom, and, when he objected, pushed him against a cement wall, punched him in the back multiple times and swept his feet out from under him, causing him to fall to the floor.  Thompson described back and hip injuries he suffered from the blows and the fall and stated that the assault caused him to defecate in his pants – for which Torres and correctional officers who arrived shortly thereafter ridiculed him.  He was then taken away by another officer and placed in a cell in a segregated unit, still in his soiled clothing.  One of Thompson's cellmates at the time testified and corroborated his story of pressing the call button, shouting to use the bathroom and to some of the confrontation, although he was told to face away by the officers and therefore did not see the beating; rather, he

2

could only testify as to what he heard transpire.

Defendant and his witnesses told a very different tale. Torres claimed to be unaware of Thompson's need to use the bathroom until he went up to the cell to see what the noise was shortly before his shift ended. He stated that once he reached Thompson's cell, plaintiff was unruly and noncompliant and therefore he did not permit him to use the bathroom because he was concerned the situation might be dangerous. He also asserted that he did not use undue force to restrain Thompson and that Thompson did not defecate in his pants and thus there was no ridicule by any of the officers. Two other correctional officers who testified corroborated this account almost word-for-word.[1] In addition, one of these witnesses, the officer who escorted Thompson to seclusion, testified that not only did he provide a change of clothing to Thompson, watch him undress and saw no evidence that he had soiled himself, but that at no time did Thompson make a request to use the bathroom or state a need to do so.

The testimony as to the extent of Thompson's injuries was also contradictory. Plaintiff testified that, although his back was injured, no one came to examine him in the segregation cell. After he was released from segregation, he continued to experience pain in his back and hip. He stated that he was unable to play basketball after the incident, although he had played the game for a year before. Thompson also testified that he requested a medical examination multiple times during the following year, but was told that he only had arthritis; when he continued to complain he was given pills or told to return to his unit. Once he was released from the facility in November 2000, he

---

[1] All witnesses were sequestered prior to their testimony.

sought medical attention for back pain that made it difficult to walk or use stairs.  In addition, he was no longer able to work the types of constructions jobs he had worked previously and was forced to take jobs that did not require heavy lifting.  Thompson's aunt testified that before he went to jail he played basketball and "wasn't limited in any way," but that afterwards he "had some type of injury" and "started having more trouble with his body," that it "look like he was pushed down, or something" and that his boss sometimes needed to pick him up from the hospital.  (Trial. Tr. 50:22, 51:7, 52:14-23, Feb. 20, 2009.)

Defendant countered with evidence from a nurse practitioner who examined Thompson two weeks after the incident.  While she corroborated Thompson's testimony that he sought medical attention for an October 22nd altercation in which he claimed to have suffered back and hip pain, she testified that she did not see any signs of lacerations, bruising or abrasions.  In addition, she stated that she did not find any swelling or crepitus[2] in his knee or hip joints and that he appeared to have a normal gait and, therefore, she thought he might be malingering.  Finally, she testified that a later x-ray of Thompson's pelvis revealed osteoarthritis, an arthritis that could cause joint pain, but which she stated was unrelated to the assault.  Another nurse testified as to a segregation unit medical log from October 1999 which indicated that Thompson had made no complaints during medical rounds while he was in the unit following the incident.

## III.   Defendant's Motions for Judgment in His Favor

---

[2] Crepitus refers to a grinding in a joint.

4

Torres' motions for JNOV and JMOL are denied.  Defendant argues that there was insufficient evidence of injury to support the jury's verdict.  While he does not distinguish between the jury's finding of liability on the constitutional violation and the assault and battery count in his memorandum (see Docket # 355, 10-16), his argument only goes to the former.[3]  Under Supreme Court precedent, the core inquiry in determining whether a prison official's actions violate the Cruel and Unusual Punishments Clause is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (internal quotation marks and citations omitted).

There was more than sufficient evidence for the jury to conclude that Torres' assault and takedown of Thompson was unnecessary to maintain order, but rather was punishment for his complaining and banging in response to Torres' order that he would have to wait to use the bathroom.  The jury could see that the officer was much larger than Thompson and, although Torres demurred when asked about it, close to twice his weight.  In addition, Thompson was a compliant prisoner who had not previously caused trouble and was, prior to this incident, unknown to the guards.  Finally, Torres could have chosen to allow Thompson to use the bathroom across the hall from his cell rather than to use force against him.  The jury reasonably could have found neither creditable nor credible his professed reason for not doing so, that Thompson might

---

[3] Under Massachusetts law, assault does not require proof of injury.  See Commonwealth v. McCan, 178 N.E. 633, 634 (Mass. 1931) ("An assault and battery is the intentional and unjustified use of force upon the person of another, however slight . . .").

5

have posed some danger to either the guards or other inmates.

Nevertheless, defendant argues that plaintiff's injuries were "de minimis at best," and thus do not rise to the level necessary to violate the Eighth Amendment.  In Hudson, the Court noted that the extent of injury is "one factor" that might suggest whether the use of force was wanton and unnecessary, but refused to find an independent "significant injury requirement."  Id. at 7-8.  While it acknowledged that not "every malevolent touch by a prison guard gives rise to a federal cause of action," it cautioned that "whenever prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident."  Id. at 9.

The First Circuit, however, has found some claims of injuries by prisoners insufficient to provide a basis for a section 1983 claim as a matter of law.  In Leavitt v. Allen, the court held that a claim that an prison officer "shoved, pushed, and grabbed" the plaintiff was a de minimis injury.  No. 94-1641, 1995 U.S. App. LEXIS 2191, at * 6-7 (1st Cir. Feb. 3, 1995) (unpublished).  In Calabria v. Dubois, the court held that a single blow caused by a thrown radio belt, resulting in only a bloody lip, was also a de minimis injury.  No. 93-1742, 1994 U.S. App. LEXIS 12424, at *6 (1st Cir. May 24, 1994) (unpublished).  Here, however, plaintiff described significant pain in his hip and back that persisted for a period of time following the incident, caused him to seek medical treatment after he was released and limited his activity afterwards – injury significantly greater than that held to be de minimis in the cases described supra.  That defendant

offered testimony suggesting plaintiff was overstating his injuries is besides the point.[4]
The jury was entitled to believe Thompson and his witnesses and there was sufficient
evidence to find that Torres used force maliciously and sadistically violating plaintiff's
constitutional rights.  Cf. Cheever v. Erdmark, No. 06-cv-351-JM, 2009 WL 1608739, *2
(D.N.H. June 02, 2009) (slip copy) ("Slamming people against walls and the floor and
kicking them in the face, back, head and ribs is objectively sufficiently egregious that it
offends evolving standards of decency in clear violation of the Eighth Amendment's
prohibition against cruel and unusual punishment.").  Defendant's motions for judgment
in his favor are denied.

## IV.    Defendant's Motions for a New Trial

Defendant's motions for a new trial under Fed. R. Civ. P. Rule 59(a) are also
denied.  A district court should grant a motion for a new trial "only if the verdict is
against the demonstrable weight of the credible evidence or results in a blatant
miscarriage of justice."  Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141, 146 (1st
Cir. 2004) (quoting Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir.1994)).
Torres argues that a number of errors compel a new trial.  First, he argues that the
verdict was against the weight of the evidence.  The crux of his argument is that his
testimony and that of his witnesses was credible while that of plaintiff and his witnesses

_____

[4] To the extent that there was evidence that plaintiff suffered from osteoarthritis,
the jury was entitled to consider his existing condition in determining any aggravation
thereof.  See Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 275-76 (1st Cir. 2000)
(endorsing the "eggshell skull" rule).  Several years after the events of this case,
Thompson was diagnosed with a rare bone disease called osteomalacia, which is not
related to the incident in suit.  That does not diminish plaintiff's account of his injuries
and symptoms immediately following the incident and for a reasonable time thereafter.

was not.  However, "[a] trial judge is not to interfere with the verdict, unless it is quite clear that the jury has reached a seriously erroneous result."  Borras v. Sea-Land Serv., Inc., 586 F.2d 881, 887 (1st Cir. 1978) (internal quotation marks and citation omitted).

Here, the jury's finding of liability was not "against the clear weight of the evidence."  Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 375 (1st Cir.2004). Contrary to defendant's assertion, his testimony and that of the two other corrections officers was not without its problems.  The evidence supported plaintiff's claim that Torres knew Thompson needed to use the bathroom for hours before the incident yet did not respond.  In addition, there was no evidence that Thompson wanted anything other than to use the bathroom, or that he posed any real threat to Torres or other inmates.  Finally, Torres and the officer who took Thompson to segregation later that evening gave inconsistent testimony concerning Thompson's statements and conduct during and after the incident.  Thus, the jury could have reasonably concluded that the testimony of defense witnesses was false and that they were hiding the fact that Thompson defecated on himself when Torres assaulted him.  Torres' claims that he had no idea how much he weighed, that he was able to verify the number of prisoners in 48 multi-prisoner cells on two tiers in 90 seconds and that he could arrive on shift and be ready to allow prisoners to use the bathroom in "a couple of minutes" all could be construed by the jury as evasive or self-serving.  (Id. at 115:14.)

Plaintiff presented a theory that Torres was aware of his need to use the bathroom but ignored it because the bathrooms were in use for drug testing that evening and, by the time they were free, his shift was almost over and he decided to let

8

the next shift handle the problem.  When plaintiff raised a ruckus, Torres beat him and

threw him to the floor him as punishment for his perceived disobedience.  The evidence

was not inconsistent with this theory and the jury's verdict was not a miscarriage of

justice requiring a new trial.

Second, defendant complains that plaintiff's counsel was, in effect, allowed to

argue a conditions of confinement case rather than focusing on the assault and that

questions by the court to Torres were prejudicial.  Both claims are without merit.  While

defendant attempted to limit the bathroom issue or keep it out of the case entirely, that

would have left the jury with no context for the altercation.  A discussion of the events

leading up to the incident was also necessary to give the jury an understanding of why

defendant used force on Thompson and why Thompson defecated on himself.  It was

also necessary to allow the jury to determine the issue of punitive damages.  See

discussion infra Part V.B.  Finally, as discussed supra, this testimony was vital in

sorting out which witnesses' testimony to credit.

The question from the court that defendant objects to was in response to Torres'

assertion that his actions at the time in not allowing Thompson out of his cell were

reasonable.  After testifying that he was worried that Thompson was going to kick down

the cell door or might shatter the window glass and use it as a weapon, the court asked

Torres:

> But if you had let him go to the bathroom, there was no danger to the door.
> Maybe if he had gone to the bathroom, then he would stop kicking the door,
> wouldn't he?

(Id. at 70:10-13.)  This question simply attempted to understand why Torres chose to

handle the situation as he did.

Defendant's remaining complaints concerning jury instructions and rulings of the court are similarly without merit.

## V.   Defendant's Motions for Remittitur

### A.   Compensatory Damages

Torres' claim that the jury award was excessive in light of the evidence presented is not unreasonable.  This court examines a jury's award by viewing the evidence in the light most favorable to the verdict.  It will only disturb the  jury's assessment of damages if it "is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand."  Trull v. Volkswagen of Am., Inc., 320 F.3d 1, 9 (1st Cir. 2002) (citations omitted).  Comparison with cases in which the appellate court found a compensatory damage award for personal injury excessive is instructive.

The First Circuit found that an award of $571,100 to a pilot who suffered a leg injury but did not prove he was unable to work was excessive.  See Anthony v. G.M.D. Airline Servs., 17 F.3d 490, 494 (1st Cir. 1994).  In Anthony, the plaintiff was injured by a forklift and continued to suffer pain in his leg, which required him to lie down several times a day and to elevate the leg.  Other than the initial administration of first aid, he required no major medical treatment and over-the-counter analgesics were adequate to control the pain.  The jury award consisted of $4,334 in out of pocket expenses and lost wages with the remainder for pain and suffering.  The court held that "the nature of Anthony's injury cannot justify a pain and suffering award that is over one hundred

times larger than the [costs] that Anthony incurred." Id. at 495.

In another case in which the plaintiff suffered a broken wrist requiring surgery for a bone transplant, faced future surgery, had to soak and heat his wrist on a daily basis, lost two years of work and could no longer work as a carpenter, the First Circuit found that an award of $600,000 was excessive when his medical costs and lost wages totaled only $50,000.  Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1988).  The court ordered remittitur of one-half the award, noting "[w]e believe . . . that $300,000 is a very generous estimate of the outer bounds of a reasonable award in this case.").  Id.

It is difficult to quantify compensation for physical and emotional injuries, particularly when plaintiff suffered no pecuniary loss, but in this case the jury's award of $825,001 is not supported by the evidence.  His injuries were not severe enough to require immediate medical attention – he did not see the nurse practitioner because of pain until almost two weeks later.  While the evidence supported plaintiff's claim that he was unable to play basketball or to perform heavy lifting after the injury, he offered no medical expert linking these limitations long term to the beating.  In addition, plaintiff testified that he was still able to find work in the construction business, albeit not as a laborer in a position requiring lifting anything heavy.  Unlike the cases cited supra, the jury here could also consider the humiliation Thompson experienced as a result of defecating on himself and the officers taunts and award damages for emotional distress.  However, there is no evidence that he required mental health treatment or that has suffered long-term emotional problems.  See Soto-Lebron v. Fed. Express

Corp., 538 F.3d 45, 69 (1st Cir. 2008) (discussing cases in which remittitur was appropriate because plaintiff did not present psychological testimony or establish that he was disabled by his  emotional injury); but see Rodriguez-Torres v. Caribbean Forms Mfr, Inc., 399 F.3d 52, 63 (1st Cir. 2005) (noting that expert medical testimony is not a prerequisite for an emotional distress award).

In this district, courts use the "least intrusive" rule for computing a remittitur.  See Jones & Jones v. Pineda & Pineda, 22 F.3d 391, 398 (1st Cir. 1994).  "Under this standard, the remittitur amount should reduce the verdict only to the maximum that would be upheld by the trial court as not excessive."  Id. (internal quotation marks and citation omitted).  I conclude that the highest reasonable total of compensatory damages for which there is adequate evidentiary support is $125,000.  This amount is within reason compared to the largest amounts awarded under similar circumstances.[5] In Ziemba v. Armstrong, 433 F. Supp. 2d 248, 256 (D. Conn. 2006), the prisoner plaintiff was punched in the face and had his face pressed into a steel bed frame while the defendant officer dug his knee into plaintiff's back and applied a nerve compression technique to his neck, which also caused pain.  Although the plaintiff did not require medical attention immediately after the assault, he suffered from back and wrist pain five days later.  The court found that the evidence would also support an inference that the attack caused psychological injuries, despite the plaintiff's failure to present direct

---

[5] Defendant cites a number of cases awarding much lesser amounts for "far more extensive injuries."  (Docket # 354, 48-49.)  Under the "least intrusive" rule, however, this court does not seek to determine the average or median award under similar circumstances; rather its "task [is] to determine the maximum dollar amount that is supported by the evidence."  Soto-Lebron, 538 F.3d at 69 (emphasis in original).

evidence of any long-term psychological effects.  It upheld the jury's award of $100,000

in compensatory damages, noting that other cases had permitted similar or higher

awards.  See id. at 254.  See also Davis v. Rennie, 264 F.3d 86, 91 (1st Cir. 2001)

(awarding $100,000 in compensatory damages to committed mental patient repeatedly

punched in the head while restrained – although on examination plaintiff did not require

additional medical treatment, he suffered post traumatic stress disorder because of the

incident).

 If Thompson does not agree to the remittitur, defendant is entitled to a new trial

to determine damages.  See Koster v. TWA, 181 F.3d 24, 36 (1st Cir. 1999) (describing

the "maximum recovery rule" whereby plaintiff may accept the remittitur or alternately

opt for a new trial on the issue of damages).

### B.    Punitive Damages

I do not, however, find the jury's award of $50,000 in punitive damages

excessive.  "Punitive damages are available where 'the defendant's conduct is shown

to be motivated by evil motive or intent, or . . . involves reckless or callous indifference

to the federally protected rights of others."  Powell v. Alexander, 391 F.3d 1, 15 (1st Cir.

2004) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Nonetheless, the Due Process

Clause of the Fourteenth Amendment prohibits "grossly excessive" awards.  State Farm

Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).  Whether an award is

grossly excessive depends on: "(1) the degree of reprehensibility of the defendant's

misconduct; (2) the disparity between the actual or potential harm suffered by the

plaintiff and the punitive damages award; and (3) the difference between the punitive

damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Mendez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 52 (1st Cir. 2009) (citing BMW of N. Am. v. Gore, 517 U.S. 559, 575 (1996)).  Of these, the degree of reprehensibility is the most important.  Id.

The jury, in finding for plaintiff, necessarily concluded that defendant beat a prisoner half his size for no reason other than because that prisoner's insistence on using the bathroom inconvenienced him and questioned his authority.  Further, the evidence permitted a finding that the officer then lied about the incident to his colleagues, hid behind the authority of his position, and caused plaintiff to be unfairly disciplined.  The jury could also find that defendant perjured himself at trial to avoid admitting to his misconduct.  Finally, the jury was aware that Torres continues to be employed at the facility, now having been in the position for 14 years, and continues to exercise control over inmates.  Not only did Torres' actions show reckless or callous indifference to Thompson's rights, his conduct was particularly reprehensible in that all he needed to do to resolve the situation without violence was to give Thompson permission to walk across the hall to use the bathroom.  Further, taunting Thompson when he defecated on himself as a result of the beating violates basic concepts of human decency.

Deterrence of future conduct is often an important element in punitive damages. See Smith v. Wade, 461 U.S. 30, 49 (1983); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 581 (1st Cir. 1989) (punitive damages appropriate where defendant's conduct "calls for deterrence and punishment").  Here, the jury could have reasonably

14

concluded that a punitive award was necessary to deter this officer, who continues

work at the Suffolk County House of Correction, from abusing prisoners in the future

and as a warning to others so inclined.  A reasonable jury could also have concluded

that Torres subsequently filed a false Disciplinary Report against Thompson and a

false Use of Force Report, further justifying punitive damages.  See Davis, 264 F.3d at

115 (jury could have concluded punitive damages justified by defendants' filing of a

groundless complaint to cover up their own wrongdoing); Casillas-Diaz v. Officer

Romualdo Palau, 463 F.3d 77, 85 (1st Cir. 2006) (punitive award justified where jury

could conclude that filing of felony charges against plaintiffs by police demonstrated

"the officers' improper motives and callous indifference to the plaintiffs' rights").

        Finally, the size of the punitive award does not offend the remaining BMW

factors.  The punitive damage award was not out of proportion to the compensatory

award; resulting in a ratio of only 1:16.5 before the court's remittitur and 1:2.5 after.

See Casillas-Diaz, 463 F.3d at 85 (finding punitive to compensatory damage ratios of

2:1, 10:1 and 19:1 reasonable).  Nor is the $50,000 award unreasonable when

compared to similar cases.  See, e.g., Cooper v. Casey, 97 F.3d 914, 920 (7th Cir.

1996) (punitive damages of $22,500 against prison guard liable for beating prisoner not

excessive), Johnson v. Howard, No. 1:96-CV-662, 2000 U.S. Dist. LEXIS 1317, at *5

(W.D. Mich. Feb. 10, 2000) ($300,000 in punitive damages not excessive where "the

evidence indicates that Defendant [prison guard] beat a defenseless man whose only

offense appears to have been that he was a prisoner and he had somehow offended

the Defendant"); Ziemba, 433 F. Supp. 2d at 256 (punitive award of $150,000 not

excessive where defendant prison officer violated plaintiff's Eighth Amendment rights "by hitting [him] in the face, kneeling on him, or otherwise injuring or hurting him during the application of the four-point restraints").  See also Davis, 264 F.3d at 117 (punitive damages ranging from $50,000 to $250,000 against mental health workers who beat a restrained mental patient causing temporary injuries and resulting in post traumatic stress disorder not excessive).

## VI. Conclusion

Accordingly, defendant's motions for judgment in his favor (Docket ## 341, 343, 349) and for a new trial on the merits (Docket # 348) are DENIED.  Defendant's motion for remittitur or in the alternative a new trial on damages (Docket # 350) is ALLOWED. The compensatory damage award is remitted to $125,000, or, at plaintiff's option, the court will order a new trial on the issue of damages.  Plaintiff shall notify defendant and the court of his decision no later than July 24, 2009.  To the extent the motion seeks a remittance of the punitive damage award, it is denied.  Defendant's motions for leave to file excessive pages (Docket # 356) and to file a reply (Docket # 376) are ALLOWED.


_____July 17, 2009_____                       _____/s/Rya W. Zobel_____
              DATE                                          RYA W. ZOBEL
                                                   UNITED STATES DISTRICT JUDGE